IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ARTHUR LEE MACK,                :

    Plaintiff,               :

vs.                                              CA 04-0813-BH-C

                                          :

JO ANNE B. BARNHART,
Commissioner of Social Security, :

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits. This action has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the August 8, 2005 hearing before the undersigned, it is determined that the Commissioner's decision denying benefits should be affirmed.

Plaintiff alleges disability due to being HIV positive with peripheral neuropathy, Hepatitis B and C, residuals from a fractured leg, and depression.

The Administrative Law Judge (ALJ) made the following findings:

> 2. The claimant is HIV positive with peripheral neuropathy and he may have hepatitis B and C. He has residuals from a fractured left leg and depression. His impairments are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation[s] No. 4.
>
> 4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).
>
> 6. The claimant has the following residual functional capacity: stand and/or walk two to three hours at one time for approximately six hours in an eight hour workday. The claimant can sit for four to five hours at one time for a total of eight hours in an eight hour workday. The claimant can lift up to 40 to 50 pounds occasionally, 20 to 30 pounds frequently, and five to 10 pounds constantly. The claimant can carry [] up to 20 to 30 pounds occasionally, 10 to 20 pounds frequently, and five to 10 pounds constantly. The claimant should never carry more than 30 pounds. The claimant can occasionally climb and occasionally crouch. The claimant can occasionally work in high, exposed places. Otherwise, the claimant has no significant physical work related limitations. The claimant is mildly impaired in the following areas: ability to relate to others, respond appropriately to supervisors and peers, and respond to work pressures. Otherwise, he has an average ability to function independently and understand and carry out instructions. The vocational expert was asked to assume mild to moderate mental work related limitations due to depression; that is, simple, repetitive, routine

work.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

11. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.29 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as hand packager (DOT 920587018), construction flagger (DOT 372667022) and an assembler (DOT 706684022) and there are more than 200,000 of the above jobs in the regional economy and more than 10 million jobs at the medium level of exertion that the claimant could perform that would fall within his residual functional capacity with approximately one million of these jobs existing in the regional economy. The undersigned finds that there are a significant number of other jobs that the claimant could perform.

13. The claimant could make an adjustment [to] work that existed in significant numbers in the national economy; accordingly, the claimant was not under a "disability,"as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

(Tr. 31-33) The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id*. at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those medium jobs identified by the vocational expert and is not disabled under the framework of the grids, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, plaintiff's sole claim is that the ALJ erred in failing to assign controlling weight to the opinions of his treating physicians, Drs. Keith Ramsey and W. K. Green, pursuant to Social Security Ruling 96-2p and 20 C.F.R. § 416.927(d). (*See* Doc. 7)

In the Eleventh Circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Id*. (internal citations omitted).

The ALJ evaluated the opinions of Drs. Ramsey and Green in the following manner:

> Dr. W. K. Green, a physician at the Mobile County Health

Department, reported on January 31, 2003, that the claimant is a patient followed for HIV infection and noted that the claimant had been followed at the clinic since April 22, 2002. Dr. Green noted that the claimant was presently not receiving antiviral medications due to possible side effects, noting that his last T-cell count was 1254 (normal range) and his last viral load was 1400. Dr. Green reported that "overall his prognosis is good." However, Dr. Green marked a box, No. 31, other neurological manifestations of HIV infection (e.g. peripheral neuropathy) with significant and persistent disorganization of motor function in two extremities. Dr. Green wrote on January 29, 2003, "patient has chronic mod-severe pain secondary to previous surgical repair of left leg fracture. Currently has exposed hardware for surgical repair." (Exhibit 12-F) Dr. Keith Ramsey, a physician at the Mobile County Health Department, wrote a letter on the claimant's behalf dated May 9, 2002, which stated as follows: "I am currently treating him for several medical conditions including HIV-1, hepatitis C, and fatigue. Mr. Mack is disabled due to these medical problems and they prevent him from holding a job." (Exhibit 4-F)

The undersigned finds that the reports of the doctors from the Mobile County Health Department are inconsistent with the reports of every other doctor in the record. Dr. Green, on one hand, reported that the claimant was essentially doing great and has a good prognosis but then reported that he was doing poorly. Dr. Green's report is inconsistent in and of itself and the undersigned gives little weight to Dr. Green's opinion. Dr. Ramsey's opinion that the claimant is unable to hold a job due to HIV, hepatitis and fatigue is inconsistent with medical records which show (1) HIV is stable and (2) lack of treatment of hepatitis, which makes the diagnosis questionable. The opinions of Dr. Green and Dr. Ramsey appear to differ dramatically from the other medical opinions in the record.

.   .   .

The undersigned notes that the medical doctors are essentially in agreement that the claimant can still perform some work related

6

>activities, except for his doctors at the Mobile County Health Department. However, the [ALJ] notes that even Dr. Green at the health department admitted that the claimant's T-cell count is in the normal range and that his prognosis is good. The weight of the medical evidence shows that the claimant, while unable to perform heavy physical labor, still has the capacity to perform work activity. The undersigned cannot overlook the consistency of multiple doctor's findings regarding the claimant's abilities to perform both physical and mental work related activities.

(Tr. 28 & 29)

The Magistrate Judge recommends that the Court find that the ALJ's decision establishes good cause for giving less weight to the opinions of Drs. Green and Ramsey. The undersigned agrees with the ALJ that these two doctors' opinions are bolstered neither by their own clinical findings and records or by the other medical evidence contained in the record. In fact, as found by the ALJ, the evidence of record supports a conclusion contrary to that suggested by Drs. Ramsey and Green; that is, the medical evidence of record establishes that plaintiff is not disabled and is capable of performing work which exists in significant numbers in the national economy. (*Compare* Tr. 324-326, 328-361 & 364-367 *with* Tr. 59-63 (vocational expert's testimony))

The undersigned disagrees with the plaintiff that the ALJ failed to specify the weight he was assigning to the opinions of Drs. Green and Ramsey (*see* Doc. 7, at 9), inasmuch as the ALJ specifically stated he was according little weight to Dr. Green's opinion. Moreover, based upon his analysis of Dr. Ramsey's

7

opinion, it is clear to the Court that the ALJ accorded little weight to that opinion as well. While plaintiff also argues that the ALJ erred in failing to discuss each of the factors listed in 20 C.F.R. § 416.927(d) prior to assigning weight to the opinions of Drs. Ramsey and Green (*see* Doc. 7, at 9), the undersigned recommends that the Court find any error in this regard entirely harmless inasmuch as there is substantial evidence in the record which supports the ALJ's conclusion that plaintiff is capable of performing work which exists in substantial numbers in the national economy. (*See* Tr. 324-326, 328-361 & 364-367)[1] Accordingly, this Court should find no reversible error regarding the manner in which the ALJ analyzed the opinions of plaintiff's treating physicians, Drs. Ramsey and Green. Because plaintiff asserts no other assignment of record, the Commissioner's decision denying plaintiff benefits should be affirmed.

## CONCLUSION

The Magistrate Judge recommends that the Commissioner's decision denying plaintiff supplemental security income benefits be affirmed.

The attached sheet contains information regarding objections to the

---

[1] In other words, substantial evidence in this record, including Dr. Green's own observations that plaintiff's T-cell count was within normal range and his prognosis was good, supports the ALJ's determination that plaintiff is not disabled and is capable of performing those jobs identified by the vocational expert during the administrative hearing.

report and recommendation of the Magistrate Judge.

**DONE** this the 12th day of August, 2005.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

10